

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| PACIFIC EMPLOYERS INSURANCE COMPANY, | : |
| Petitioner, | : |
| v. | : |
| GLOBAL REINSURANCE CORPORATION OF AMERICA, U.S. BRANCH (F/K/A GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH), | : |
| Respondent. | : |
| | : |

CIVIL ACTION NO.

---

### PACIFIC EMPLOYERS INSURANCE COMPANY'S
### PETITION TO CONFIRM ARBITRATION AWARD

Petitioner, Pacific Employers Insurance Company ("PEIC"), by its counsel White and Williams LLP, hereby moves this Court to enter an order confirming the arbitral Final Award dated March 7, 2011, which was issued following an arbitration between PEIC and Global Reinsurance Corporation of America, U.S. Branch (f/k/a Gerling Global Reinsurance Corporation, U.S. Branch) ("Global").

    1.    This Petition to Confirm Arbitration Award pursuant to Section 9 of the Federal Arbitration Act ("FAA") is submitted to confirm the arbitral Final Award (the "Final Award"), dated March 7, 2011, which was issued following a two day arbitration between Petitioner and Respondent, Global Reinsurance Corporation of America, U.S. Branch (f/k/a Gerling Global Reinsurance Corporation, U.S. Branch) ("Global"). *See* Final Award, attached hereto as Exhibit 1.[1]

---

[1] Pursuant to the agreement of the parties that certain Arbitration Information be confidential, PEIC has requested that the Court maintain the Final Award under seal for the reasons set forth therein.

8096816v.1

## THE PARTIES

2.      PEIC is a Pennsylvania corporation with its principal place of business located at 436 Walnut Street, Philadelphia, Pennsylvania 19106.

3.      Upon information and belief, Global is a New York corporation with its principal place of business located at Times Square Tower, 7 Times Square, 37th Floor, New York, New York 10036.

## JURISDICTION AND VENUE

4.      This Petition is submitted under Chapter 1 of the FAA, 9 U.S.C. §§ 1-16.  This proceeding involves commercial arbitration agreements that are between citizens of the United States, and thus falls within Chapter 1 of the FAA.  *See* 9 U.S.C. § 1.

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 in that the petition involves citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6.      This Court has personal jurisdiction over Global as Global is incorporated by the State of New York and has its principal place of business in New York, New York.

7.      Further, this Court has personal jurisdiction by virtue of Global's agreement, in the subject contracts of reinsurance, that "any arbitration shall take place in New York, N.Y." *See* Global Facultative Certificate Nos. 71-23346 and 71-23347 (hereinafter "Global Certificates"), attached hereto as Exhibits 2 and 3 respectively, at ¶ 17 ("Arbitration Clause"). As the arbitration occurred in New York, New York, pursuant to the agreement of the parties, personal jurisdiction is proper in this Court. *See id.*

8.      Venue is proper in this Court because Global is deemed to reside in this district, as its principal place of business is located in this district and a substantial part of the events giving rise to this action occurred in this district.  28 U.S.C. § 1391(a)(2).

9.    Further, venue is proper here because Section 9 of the FAA provides that "[i]f no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made." 9 U.S.C. § 9. The Final Award was made in New York, New York; thus, venue in this district is proper.

10.    Moreover, venue is appropriate in this Court as, pursuant to the contractual agreement of the parties, the arbitration hearing was conducted in this district.

## BACKGROUND

11.    The underlying arbitration concerned Global's responsibility under two facultative reinsurance certificates for asbestos claims paid by PEIC under an umbrella excess policy issued to Buffalo Forge Company ("Buffalo Forge").

12.    In a reinsurance contract, a reinsurer agrees to indemnify the reinsured against all or part of the loss that the reinsured may sustain under an insurance policy or policies the company has issued, in exchange for a portion of the premium paid to the reinsured for the insurance policies.

13.    A "facultative" reinsurance contract reinsures a specific insurance policy or risk, as opposed to "treaty" reinsurance, which reinsures multiple insurance policies or an entire book of business written by the reinsured.

14.    PEIC issued an umbrella commercial liability excess of loss policy to its insured, Buffalo Forge, effective June 30, 1980 to June 30, 1981 ("PEIC Policy"). *See* PEIC Policy No. XMO 003649, attached as Exhibit 4 hereto.

15.    The PEIC Policy provides indemnity limits of $9 million per occurrence and in the aggregate for products claims excess of $1 million in underlying insurance provided by Utica Mutual. *Id.* at 1.

16.    The PEIC Policy also provides for the payment of defense costs "in addition" to the policy limit. *Id.* at 2.

8096816v.1

17.     Gerling Global Reinsurance Corporation (as predecessor to Global), issued two facultative reinsurance certificates to PEIC, Global Certificate Nos. 71-23346 and 71-23347, pursuant to which Global, as the reinsurer, agreed to reinsure, on an excess of loss basis, parties of the PEIC Policy.

18.     The Global Certificates obligated Global to reimburse PEIC for a proportion of "loss" and "in addition thereto" a proportion of expenses under PEIC's policy with Buffalo Forge. *See* Exhibits 2 and 3, at ¶ 11.

19.     As with many reinsurance contracts, the Global Certificates provided that Global's liability "shall follow that of [PEIC] and . . . shall be subject in all respects to all the terms and conditions of [PEIC's] policy." *See* Exhibits 2 and 3, at ¶ 9.

20.     The Global Certificates also contain "follow the settlements" language, which provides that all of PEIC's loss settlements under the Buffalo Forge policy will be paid promptly following the receipt of proof of loss. *See* Exhibits 2 and 3, at ¶ 12.

21.     After the Global Certificates were executed, Buffalo Forge and its corporate successors were named as defendants in many asbestos products personal injury claims and lawsuits. These claims and lawsuits were tendered to Buffalo Forge's insurers for defense and indemnity.

22.     Eventually, the insurance policy below PEIC's policy exhausted and PEIC began to participate in defense and indemnity of Buffalo Forge and its corporate successors, pursuant to the terms of the PEIC Policy.

23.     PEIC's participation in the defense and indemnity of Buffalo Forge was in accordance with the terms of a "Defense and Indemnity Agreement" between Buffalo Forge's corporate successors and their remaining insurers with unexhausted insurance policies.

24. Eventually, PEIC's indemnity payments under the PEIC Policy exceeded the retention on the lower of Global's facultative certificates.

25. Beginning on September 2, 2009, PEIC issued reinsurance billings to Global under Global's share of PEIC indemnity payments under the PEIC Policy and, in addition thereto, Global's proportionate share of defense costs.

26. In November 2009, Global sent another letter to PEIC, wherein Global raised a laundry list of purported issues with PEIC's reinsurance billing.

27. Global refused to pay the billings in full, *inter alia*, because Global contended that the "Reinsurance Accepted" provision of the facultative certificate operated as a "cap" on its total liability under the certificates, inclusive of defense costs.

28. On December 3, 2009, PEIC initiated arbitration proceedings seeking to recover the outstanding balance due from Global under Global Certificate No. 71-23346, as well as a declaration regarding Global's payment obligations for amounts which will in the future become due under that certificate and Global Certificate No. 71-23347.

29. A panel of three arbitrators (the "Panel") was appointed and accepted by the parties at an Organizational Meeting on October 11, 2010 in New York, New York.

30. After discovery and briefing, a two-day evidentiary hearing was held on March 1st and March 2nd, 2011 in New York, New York.

31. The Panel issued its Final Award on March 7, 2011. *See* Exhibit 1.

32. PEIC now petitions this Court to confirm the Final Award.

## THE AWARD SHOULD BE CONFIRMED

33. Section 9 of the FAA provides that a party may seek an order confirming an arbitration award within one year of the date the award was made, and that a court "must grant

such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of [the FAA]." 9 U.S.C. § 9.

34.     Second Circuit precedent is clear that, under this standard, "arbitration awards are subject to 'severely limited' review by the courts" and thus the courts shall confirm the award absent certain specific, enumerated grounds for refusal or deferral of recognition. *Bradley v. Merrill Lynch & Co., Inc.*, 344 Fed. Appx. 689, 690 (2d Cir. 2009).

35.     Pursuant to 9 U.S.C. § 12, a party wishing to vacate, modify, or correct an arbitration award must do so within three months from the date that the award was filed or delivered. Where such party fails to do so, as is the case here, that party is estopped from later objecting to the award. *See, e.g., Arch Dev. Corp. v. Biomet*, 2003 WL 21697742 (N.D. Ill. 2003), *quoting Piccolo v. Dain, Kalman & Quail, Inc.*, 641 F.2d 598, 600 (8th Cir. 1981) ("A party who failed to comply with the statutory precondition of timely service of notice forfeits the right to judicial review of the award.").

36.     More than three (3) months have elapsed since the Panel delivered its Final Award and, within such time, Global did not move to vacate, modify, or correct the Panel's Final Award.

37.     Further, none of the grounds for vacating an award, as set out in the FAA under section 10, are present.

38.     PEIC now petitions this Court to confirm the Panel's Final Award pursuant to 9 U.S.C. § 9.  As the Final Award has not been vacated, modified, or corrected as prescribed by sections 10 and 11 of the FAA, this Court must confirm the Panel's Final Award pursuant to 9 U.S.C. § 9.

Respectfully submitted,

OF COUNSEL:
Christine G. Russell
Ellen K. Burrows
Brendan D. McQuiggan
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA  19103
russellc@whiteandwilliams.com
burrowse@whiteandwilliams.com
mcquigganb@whiteandwilliams.com
(215) 864-6301/7028/7173


Dated: August 26, 2011

By: _Rafael Vergara_
Rafael Vergara
White and Williams LLP
One Penn Plaza
250 W. 34th Street, Suite 4110
New York, NY 10119
vergarar@whiteandwilliams.com
(212) 244-9500

*Attorneys for Petitioner,*
*Pacific Employers Insurance Company*

# Exhibit 1

CONFIDENTIAL

**In the Matter of the Arbitration Between**

PACIFIC EMPLOYERS INSURANCE COMPANY,

Petitioner,

- and -

GLOBAL REINSURANCE CORPORATION OF
AMERICA, U.S. BRANCH (F/K/A GERLING
GLOBAL REINSURANCE CORPORATION,
 U.S. BRANCH),

Respondent.

(Concerning Buffalo Forge Asbestos Claims)

## FINAL AWARD

The Panel, consisting of Lawrence O. Monin, Susan S. Claflin and Paul A. Bellone, having reviewed the parties' respective position statements and pre-hearing briefing and having considered all the evidence and arguments presented at a two-day evidentiary hearing on March 1 and 2, 2011 in New York and after additional review, consideration and deliberation, the Panel ORDERS as follows:

1) Global is Ordered to pay its pro rata share of expenses in addition to the "Reinsurance Accepted" amount set forth in Paragraph 5, Section 4 of its Certificate Nos. 71-23346 and 71-23347.

2) Within five (5) days of the date hereof, the parties shall reconcile and agree as to the amount of any previous billings that remain unpaid. Such unpaid amount(s) will be paid to PEIC within (30) days from the date hereof together with interest calculated pursuant to paragraph (4) below. This decision precludes Global from raising any defense to the payment ordered.

3) Global shall pay to PEIC the full amount of all future billings under Certificate Nos. 71-23346 and 71-23347 within thirty (30) days of their receipt. With respect to all future billings under Certificates Nos. 71-23346 and 71-23347, Global is precluded from raising, as a defense to payment, any defense which it could have raised during the course of this Arbitration or any defense raised and subsequently

to all future billings under Certificates Nos. 71-23346 and 71-23347, Global is precluded from raising, as a defense to payment, any defense which it could have raised during the course of this Arbitration or any defense raised and subsequently withdrawn or abandoned. Interest on future billings outstanding for more than 30 days will accrue at the Pennsylvania statutory rate of 6% per annum.

4) Global is further ordered to pay interest on all past due amounts at the Pennsylvania statutory rate of 6% per annum. Interest shall be calculated on all amounts from a date thirty (30) days following the date of the billing. Within five (5) days from the date of this Order, the parties shall reconcile and agree as to the amount currently due with respect to interest.

5) All other requests for relief are denied.

6) The Panel will retain jurisdiction to resolve any dispute arising out of the performance of this Award for 180 days from the date of the Award, unless the Parties jointly agree to terminate the Panel's jurisdiction at an earlier date.

BY THE PANEL:

_James O. Morin_, Umpire

_Susan Clapin_, Arbitrator

Arbitrator Bellone disagrees with ORDER paragraph #1, but in view of the Majority's agreement on Order paragraph #1, Arbitrator Bellone agrees with Order paragraphs 2 – 6,

_Paul Bellone_, Arbitrator

Dated: ___March 7, 2011

# Exhibit 2



CERTIFICATE OF FACULTATIVE REINSURANCE

# GERLING GLOBAL REINSURANCE CORPORATION

UNITED STATES BRANCH

71– 23346

717 Fifth Avenue, New York, N.Y. 10022

Herein called the "Reinsurer"

## DECLARATIONS

1. Does hereby reinsure:

Pacific Employers Insurance Company
Los Angeles, Ca

(herein called the Company) in respect of the Company's policy hereinafter
described, in consideration of the payment of the premium and subject to
the terms, conditions and amount of liability set forth, as follows:

(Name and Address of Ceding Company)

2. Name of Insured: **Buffalo Forge Company, Etal**

   Location: **Buffalo, N.Y.**

3. Company Policy No.: **XMO 00 3649**   Effective From: **June 1, 1980**   To: **June 1, 1981**
   (12:01 A.M. Standard Time at the Address of the Insured)

4. Reinsurance Period:   Effective From: **June 1, 1980**   To: **June 1, 1981**
   (12:01 A.M. Standard Time at the Address of the Insured)

5. DETAILS OF REINSURANCE AFFORDED:

| | |
|---|---|
| SECTION 1. TYPE OF INSURANCE | Umbrella Liability |
| SECTION 2. POLICY LIMITS AND APPLICATION | $9,000,000 each occurrence/annual aggregate where applicable excess Primary Insurance or SIR. |
| SECTION 3. COMPANY RETENTION | $150,000 part of the First $1,000,000 each occurrence/annual aggregate where applicable excess Primary Insurance or SIR. |
| SECTION 4. REINSURANCE ACCEPTED | $1,000,000 part of $4,000,000 each occurrence/annual aggregate where applicable excess $1,000,000 each occurrence/annual aggregate where applicable excess Primary Insurance or SIR. |

| SECTION 5. BASIS OF ACCEPTANCE | [X] Excess of Loss | [ ] Contributing Excess | [ ] Non-Concurrent |
|---|---|---|---|

SECTION 6.
CANCELLATION NOTICE IF DIFFERENT THAN ITEM 18   **45**   DAYS

6. Reinsurance Premium Computation   [X] Flat Charge   [ ] Adjustable on Basis of _____ per _____
   Deposit Premium $ · **2,718.75**

   Minimum Premium $ **2,718,75**
   Audit Period: **none**
7. Ceding Commission: **nil**

PREMIUM IF PAID IN INSTALLMENTS

| EFFECTIVE DATE | 1st ANNIVERSARY | 2nd ANNIVERSARY | TOTAL PREMIUM $ |
|---|---|---|---|
| | | | |

8. Intermediary:

E.W. Blanch Company
Northwestern Financial Center
Minneapolis, Minnesota   55431

GERLING GLOBAL OFFICES INC.

U.S. Manager

CERT. 1 REV. 6/80

ORIGINAL   Authorized Signature   JAN 2 0 1981

9. The Company warrants to retain for its own account, subject to other Reinsurance, the amount of liability specified in Section 3, Item 5 of the Declarations, and the liability of the Reinsurer specified in Section 4, Item 5 of the Declarations shall follow that of the Company and except as otherwise specifically provided herein, or designated as non-concurrent reinsurance in the Declarations, shall be subject in all respects to all the terms and conditions of the Company's policy. In no event shall anyone other than the Company, or in the event of the Company's insolvency, its Receiver, Liquidator, or Statutory successor, have any rights or assignment of rights under this contract. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto which in any manner affect this Certificate, and shall make available for inspection and place at the disposal of the Reinsurer, at reasonable times, any of its records relating to this reinsurance or claims in connection therewith.

10. The Company shall notify the Reinsurer promptly, in writing, of any occurrence which in the Company's estimate of the value of the injuries or damages sought, without regard to liability, might result in a judgement in an amount sufficient to involve this Certificate, or where in the Company has created a loss reserve equal to or greater than fifty (50) percent of the Company's retention as specified in Section 3, Item 5 of the Declarations; or if this reinsurance applies on a contributory excess basis, when notice of claim is received by the Company. The Company will further advise the Reinsurer of subsequent developments, in writing, in a complete and timely manner. While the Reinsurer does not undertake to investigate or defend claims or suits, it shall nevertheless have the right and shall be given the opportunity, with the full cooperation of the Company, to associate counsel, at its own expense, and to join with the Company and its representatives in the defense and control of any claim, suit or proceeding involving this Certificate. If not excluded in other parts of this Certificate.

11. Reinsurer shall pay its proportion of expenses, other than Company salaries and office expenses incurred by the Company in the investigation and settlement of claims or suits provided loss payment is made by the Company affecting this Certificate, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment, and with the prior notice to and consent of Reinsurer to trial court proceedings, in proportion of court costs and interest on any judgement or award.

12. Payment of its proportion of loss and expense paid by the Company will be made by the Reinsurer to the Company promptly following the receipt of proof of loss.

13. The Reinsurer will be paid or credited by the Company with its proportion of salvage, i.e., reimbursement obtained or recovery made by the Company, less the actual cost (excluding Company salaries and office expenses) of obtaining such reimbursement or making such recovery. If the reinsurance afforded by this certificate is on an excess of loss basis, salvage shall be applied in the inverse order in which liability attaches.

14. The Company undertakes not to claim any deduction in respect of the premium herein when making tax returns, other than Income or Profits Tax returns, to any State or Territory of the United States or the District of Columbia.

15. In the event of the insolvency of the Company, the reinsurance provided by this Certificate shall be payable by the Reinsurer on the basis of the liability of the Company under the policy(ies) reinsured, without diminution because of such insolvency, directly to the Company or its Receiver, Liquidator, or Statutory successor pursuant to the Statute of any State of the United States having jurisdiction and to the extent that such reinsurance as is afforded hereunder may be credited to the Company as an admitted asset or deduction from liability, it being understood that subject to such amendment, the Reinsurer may avail itself of any other provisions of any such Statute applicable. The Reinsurer shall be given written notice of the pendency of each claim against the Company on the policy(ies) reinsured hereunder within a reasonable time after such claim is filed in the insolvency proceedings. The Reinsurer shall have the right to investigate each such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated, any defenses which it may deem available to the Company or, its Receiver, Liquidator, or Statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to court approval, against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as a result of the defense undertaken by the Reinsurer.

16. The Reinsurer may offset any balance(s) whether on account of premiums, commissions, claims, losses, adjustment expense, salvage or any other amount(s) due from one party to the other under this Certificate or under any other agreement heretofore or hereafter entered into between the Company and Reinsurer, whether acting as assuming Reinsurer or as Ceding Company.

17. Should an irreconcilable difference of opinion arise as to the interpretation of this Certificate, it is hereby mutually agreed that, as a condition precedent to any right of action hereunder, such difference shall be submitted to arbitration, one arbitrator to be chosen by the Company, one arbitrator by the Reinsurer and an umpire to be mutually agreed upon and chosen by the two arbitrators before they enter upon arbitration. The arbitrators and umpire so selected shall be officers or former officers of other insurance or reinsurance companies. In the event that either party should fail to choose an arbitrator within sixty (60) days following receipt of a written request by the other party to enter upon arbitration, the requesting party may then choose a second arbitrator and the two selected arbitrators shall in turn choose an umpire before entering upon arbitration. In the event, the two selected arbitrators fail to agree on the selection of an umpire, after meeting together and within ten (10) days of their appointment, then each arbitrator shall select one name from a list of three names submitted by the other arbitrator and the umpire shall be selected by lot between the two names chosen.

Each party shall thereupon present its case to the arbitrators within sixty (60) days after date of their appointment. The decision of the arbitrators shall be final and binding upon both parties, but failing to agree they shall call upon the umpire and the decision of the majority shall be final and binding upon both parties. Each party shall bear the expense of its own arbitrator and shall jointly and equally bear with the other the expense of the umpire and of the arbitration. In the event that two of the arbitrators are chosen by one party, as above provided, the expense of the arbitrators, the umpire and the arbitration shall be equally divided between the two parties. The arbitrators shall adopt their own rules and procedure and may waive the requirements of the rules of evidence. Any such arbitration shall take place in New York, N.Y., unless some other location is mutually agreed upon by the two parties in interest.

18. Cancellation of the policy of the Company shall constitute automatic cancellation of this Certificate and it may also be cancelled on a pro rata basis by either party mailing or delivering to the other written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. If at any time during the continuance of this Certificate, the Company should lose the whole or any part of its paid-up capital or go into liquidation or receivership, whether voluntary or involuntary, or should have a Conservator or Rehabilitator appointed or undergo any process of reconstruction or reinsure its entire business or be acquired or controlled or merged with any other company, corporation or body, the Reinsurer shall have the right to terminate this Certificate forthwith upon the giving of notice in writing to the Company.

19. The terms of this Certificate shall not be waived or changed except by endorsement issued to form a part hereof, and executed by a duly authorized representative of the Reinsurer.

20. The Company shall notify the Reinsurer promptly, in writing, of any situation wherein the Company may become obligated to pay as damages either by judgement or agreement, due to the alleged or actual bad faith, fraud, or negligence of the Company, its employees or representatives, in the handling of, or failure to settle a claim on behalf of or by the named insured under its policy(ies), or for the costs or expense incurred therefrom. The Reinsurer shall have the right and shall be given the opportunity, with the full cooperation of the Company, to associate counsel, at its own expense, and to join with the Company and its representatives in the defense and control of any claim, suit or proceeding involving this item.

21. Definitions:
As used in this Certificate under Section 5, Item 5 of the Declarations, the following terms shall have the meaning set opposite each:

Excess of Loss: The limit(s) of liability of the Reinsurer, as stated in Section 4, Item 5 of the Declarations, applies(y) only to that portion of loss within the policy limits, in excess of the applicable retention of the Company as stated in Section 3, Item 5 of the Declarations.

Contributing Excess: The Company's policy(ies) applies(y) in excess of other valid insurance, reinsurance or self-insured retention and the limit(s) of liability of the Reinsurer applies(y) proportionately to all loss within the policy limits in the amount(s) set forth in Section 4, Item 5 of the Declarations.

Non-Concurrent: The reinsurance provided does not apply to any hazards or risks of loss or damage covered under the Company's policy, which are specifically excluded in the Declarations. The retention of the Company and liability of the Reinsurer shall be determined as though the Company's policy(ies) applied only to the hazards or risks of loss or damage which would not be excluded in the Declarations.

In witness Whereof, the Reinsurer has caused this Certificate to be signed by its authorized representative.

# Exhibit 3



### CERTIFICATE OF FACULTATIVE REINSURANCE
## GERLING GLOBAL REINSURANCE CORPORATION

71 – 23347

### UNITED STATES BRANCH

**717 Fifth Avenue, New York, N.Y. 10022**
Herein called the "Reinsurer"

### DECLARATIONS

1. Does hereby reinsure:

Pacific Employers Insurance Company, Los Angeles, Ca

(herein called the Company) in respect of the Company's policy hereinafter described, in consideration of the payment of the premium and subject to the terms, conditions and amount of liability set forth, as follows:

*(Name and Address of Ceding Company)*

2. Name of Insured: Buffalo Forge Company

   Location: Buffalo, N.Y.

3. Company Policy No.: XMO 00 3649    Effective From: June 1, 1980    To: June 1, 1981
   (12:01 A.M. Standard Time at the Address of the Insured)

4. Reinsurance Period:    Effective From: June 1, 1980    To: June 1, 1981
   (12:01 A.M. Standard Time at the Address of the Insured)

5. DETAILS OF REINSURANCE AFFORDED:

| | |
|---|---|
| **SECTION 1.**<br>TYPE OF INSURANCE | Umbrella Liability |
| **SECTION 2.**<br>POLICY LIMITS AND APPLICATION | $9,000,000 each occurrence/annual aggregate where applicable excess Primary Insurance or SIR. |
| **SECTION 3.**<br>COMPANY RETENTION | $150,000 part of the First $1,000,000 each occurrence/annual aggregate where applicable excess Primary Insurance or SIR. |
| **SECTION 4.**<br>REINSURANCE ACCEPTED | $2,000,000 part of $4,000,000 each occurrence/annual aggregate where applicable excess $5,000,000 each occurrence/annual aggregate where applicable excess Primary Insurance or SIR. |

| SECTION 5.<br>BASIS OF ACCEPTANCE | ☒ Excess of Loss | ☐ Contributing Excess | ☐ Non-Concurrent |
|---|---|---|---|

| SECTION 6.<br>CANCELLATION NOTICE IF DIFFERENT THAN ITEM 18 | 45 DAYS |
|---|---|

6. Reinsurance Premium Computation  ☒ Flat Charge   ☐ Adjustable on Basis of _____ per _____
   Deposit Premium $ 1,812.50

   Minimum Premium $ 1,812.50
   Audit Period: none
7. Ceding Commission: nil

**PREMIUM IF PAID IN INSTALLMENTS**

| EFFECTIVE DATE | 1st ANNIVERSARY | 2nd ANNIVERSARY | TOTAL PREMIUM $ |
|---|---|---|---|
| | | | |

8. Intermediary:

E.W. Blanch Company
Northwestern Financial Center
Minneapolis, Minnesota 55431

GERLING GLOBAL OFFICES INC.
U.S. Manager

Authorized Signature

ORIGINAL

CERT. 1 REV. 6/80

9.   The Company warrants to retain for its own account, subject to other Reinsurance, the amount of liability specified in Section 3, Item 5 of the Declarations, and the liability of the Reinsurer specified in Section 4, Item 5 of the Declarations shall follow that of the Company and except as otherwise specifically provided herein, or designated as non-concurrent reinsurance in the Declarations, be subject in all respects to all the terms and conditions of the Company's policy. In no event shall anyone other than the Company, or in the event of the Company's insolvency, its Receiver, Liquidator, or Statutory successor, have any rights or assignment of rights under this contract. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto which in any manner affect this Certificate, and shall make available for inspection and place at the disposal of the Reinsurer, at reasonable times, any of its records relating to this reinsurance or claims in connection therewith.

10.   The Company shall notify the Reinsurer promptly, in writing, of any occurrence which in the Company's estimate of the value of the injuries or damages sought, without regard to liability, might result in a judgement in an amount sufficient to involve this Certificate, or wherein the Company has created a loss reserve equal to or greater than fifty (50) percent of the Company's retention as specified in Section 3, Item 5 of the Declarations; or if this reinsurance applies on a contributory excess basis, when notice of claim is received by the Company. The Company will further advise the Reinsurer of subsequent developments, in writing, in a cautious and timely manner. While the Reinsurer does not undertake to investigate or defend claims or suits, it shall nevertheless have the right and shall be given the opportunity, with the full cooperation of the Company, to associate counsel, at its own expense, and to join with the Company and its representatives in the defense and control of any claim, suit or proceeding involving this Certificate, if not excluded in other parts of this Certificate.

11.   Reinsurer shall pay its proportion of expenses, other than Company salaries and office expenses incurred by the Company in the investigation and settlement of claims or suits provided loss payment is made by the Company affecting this Certificate, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment, and with the prior notice to and consent of Reinsurer to trial court proceedings, its proportion of court costs and interest on any judgement or award.

12.   Payment of its proportion of loss and expense paid by the Company will be made by the Reinsurer to the Company promptly following the receipt or proof of loss.

13.   The Reinsurer will be paid or credited by the Company with its proportion of salvage, i.e., reimbursement obtained or recovery made by the Company, less the actual cost (excluding Company salaries and office expenses) of obtaining such reimbursement or making such recovery. If the reinsurance afforded by this certificate is on an excess of loss basis, salvage shall be applied in the inverse order in which liability attaches.

14.   The Company undertakes not to claim any deduction in respect of the premium herein when making tax returns, other than Income or Profits Tax returns, to any State or Territory of the United States or the District of Columbia.

15.   In the event of the insolvency of the Company, the reinsurance provided by this Certificate shall be payable by the Reinsurer on the basis of the liability of the Company under the policy(ies) reinsured, without diminution because of such insolvency, directly to the Company or its Receiver, Liquidator, or Statutory successor pursuant to the Statute of any State of the United States having jurisdiction and to the extent that such reinsurance as is afforded hereunder may be credited to the Company as an admitted asset or deduction from liability, it being understood that subject to such amendment, the Reinsurer may avail itself of any other provisions of any such Statute applicable. The Reinsurer shall be given written notice of the pendency of each claim against the Company on the policy(ies) reinsured hereunder within a reasonable time after such claim is filed in the insolvency proceedings. The Reinsurer shall have the right to investigate each such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated, any defenses which it may deem available to the Company or its Receiver, Liquidator, or Statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to court approval, against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as a result of the defense undertaken by the Reinsurer.

16.   The Reinsurer may offset any balance(s) whether on account of premiums, commissions, claims, losses, adjustment expense, salvage or any other amounts(s) due from one party to the other under this Certificate or under any other agreement heretofore or hereafter entered into between the Company and Reinsurer, whether acting as assuming Reinsurer or as Ceding Company.

17.   Should an irreconcilable difference of opinion arise as to the interpretation of this Certificate, it is hereby mutually agreed that, as a condition precedent to any right of action hereunder, such difference shall be submitted to arbitration, one arbitrator to be chosen by the Company, one arbitrator by the Reinsurer and an umpire to be mutually agreed upon and chosen by the two arbitrators before they enter upon arbitration. The arbitrators and umpire so selected shall be officers or former officers of other insurance or reinsurance companies. In the event that either party should fail to choose an arbitrator within sixty (60) days following receipt of a written request by the other party to enter upon arbitration, the requesting party may then choose a second arbitrator and the two selected arbitrators shall in turn choose an umpire before entering upon arbitration. In the event, the two selected arbitrators fail to agree on the selection of an umpire; after meeting together and within ten (10) days of their appointment, then each arbitrator shall select one name from a list of three names submitted to him by the other arbitrator and the umpire shall be selected by lot between the two names chosen.

Each party shall thereupon present its case to the arbitrators within sixty (60) days after date of their appointment. The decision of the arbitrators shall be final and binding upon both parties, but failing to agree they shall call upon the umpire and the decision of the majority shall be final and binding upon both parties. Each party shall bear the expense of its own arbitrator and shall jointly and equally bear with the other the expense of the umpire and of the arbitration. In the event that two of the arbitrators are chosen by one party, as above provided, the expense of the arbitrators, the umpire and the arbitration shall be equally divided between the two parties. The arbitrators shall adopt their own rules and procedures and may waive the requirements of the rules of evidence. Any such arbitration shall take place in New York, N.Y., unless some other location is mutually agreed upon by the two parties in interest.

18.   Cancellation of the policy of the Company shall constitute automatic cancellation of this Certificate and it may also be cancelled on a pro rata basis by either party, mailing or delivering to the other written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. If at any time during the continuance of this Certificate, the Company should lose the whole or any part of its paid-up capital or go into liquidation or receivership, whether voluntary or involuntary, or should have a Conservator or Rehabilitator appointed or undergo any process of reconstruction or reinsure its entire business or be acquired or controlled or merged with any other company, corporation or body, the Reinsurer shall have the right to terminate this Certificate forthwith upon the giving of notice in writing to the Company.

19.   The terms of this Certificate shall not be waived or changed except by endorsement issued to form a part hereof, and executed by a duly authorized representative of the Reinsurer.

20.   The Company shall notify the Reinsurer promptly, in writing, of any situation wherein the Company may become obligated to pay as damages either by judgement or agreement, due to the alleged or actual bad faith, fraud, or negligence of the Company, its employees or representatives, in the handling of, or failure to settle a claim on behalf of or by the named insured under its policy(ies), or for the costs or expense incurred therefrom. The Reinsurer shall have the right and shall be given the opportunity, with the full cooperation of the Company, to associate counsel, at its own expense, and to join with the Company and its representatives in the defense and control of any claim, suit or proceeding involving this item.

21.   Definitions:
As used in this Certificate under Section 5, Item 5 of the Declarations, the following terms shall have the meaning set opposite each:

Excess of Loss: The limit(s) of liability of the Reinsurer, as stated in Section 4, Item 5 of the Declarations, applies(y) only to that portion of loss within the policy limits, in excess of the applicable retention of the Company as stated in Section 3, Item 5 of the Declarations.

Contributing Excess: The Company's policy(ies) applies(y) in excess of other valid insurance, reinsurance or self-insured retention and the limit(s) of liability of the Reinsurer applies(y) proportionately to all loss within the policy limits in the amount(s) set forth in Section 4, Item 5 of the Declarations.

Non-Concurrent: The reinsurance provided does not apply to any hazards or risks of loss or damage covered under the Company's policy, which are specifically excluded in the Declarations. The retention of the Company and liability of the Reinsurer shall be determined as though the Company's policy(ies) applied only to the hazards or risks of loss or damage which would not be excluded in the Declarations.

In Witness Whereof, the Reinsurer has caused this Certificate to be signed by its authorized representative.

# Exhibit 4

516-01-536

☒ New;  ☐ Renewal; ☐ Rewrite of:

← Agency Name

Agency Number

Policy No.

XMO 00 36 49

**EXCESS BLANKET CATASTROPHE
LIABILITY POLICY**

## PACIFIC EMPLOYERS INSURANCE COMPANY

XMO **00 36 49**

Named
Insured

Buffalo Forge Company
490 Broadway
Buffalo, New York 14204

Address

Policy Period: From **6-1-80** to **6-1-81**   *see note*

12:01 A.M., standard time at the address
of the Named Insured as stated herein.

Audit Period:  Annual, unless otherwise stated _____

Endorsements attached to policy at inception:  Nuclear Energy Liability Exclusion . **Sch. of U/L Ins., Named Insured**
**Endorsement, C.C.C., Excl., E.R.I.S.A. Excl.** *# 7 Additional Insured*

### LIMITS OF LIABILITY

**PEIC'S LIMIT OF LIABILITY:**

ITEM 1.  $ **9,000,000**   arising out of any one occurrence because of personal injury,
property damage or advertising injury or any combination thereof.

ITEM 2.  $ **9,000,000**   arising out of all occurrences during each policy year because of
the products hazard, or the completed operations hazard, or both combined.

**INSURED'S RETAINED LIMIT:**
Underlying Insurance, or

ITEM 3.  $ **10,000**   because of personal injury, property damage or advertising injury arising
out of any one occurrence not within the terms of coverage of underlying
insurance but within the terms of the coverage of this insurance.

### PREMIUM COMPUTATION

| Estimated | Rate per | Total Advance Premium |
|---|---|---|
| _____ | **Flat** | **$48,000.00** |

MINIMUM PREMIUM $ ___**$48,000.00**_____

in the event of cancellation by the Named Insured, PEIC shall receive and retain not less than $ **12,000.00** as the Minimum Premium.

Countersigned By _____

Authorized Agent

LD-6893 Ptd. in U.S.A.

EXTRA COPY

 **PACIFIC EMPLOYERS INSURANCE COMPANY**, LOS ANGELES, CALIFORNIA



SPECIMEN FORM
From SSU

**EXCESS BLANKET CATASTROPHE**

**LIABILITY POLICY**

**A Stock Insurance Company, herein called PEIC**

In consideration of the premium to be paid, in reliance upon the statements in the declarations made a part hereof and subject to all of the terms of this policy, agrees with the Named Insured as follows:

## INSURING AGREEMENT

**Coverage A—Personal Injury Liability**
**Coverage B—Property Damage Liability**
**Coverage C—Advertising Liability**
PEIC will indemnify the Insured for ultimate net loss in excess of the retained limit hereinafter stated which the Insured shall become legally obligated to pay as damages because of

      A. personal injury or
      B. property damage or
      C. advertising injury

to which this insurance applies, caused by an occurrence, and

(1) With respect to any personal injury, property damage or advertising injury not within the terms of the coverage of underlying insurance but within the terms of coverage of this insurance; or

(2) If limits of liability of the underlying insurance are exhausted because of personal injury, property damage or advertising injury during the period of this policy
    PEIC will
    (a) have the right and duty to defend any suit against the Insured seeking damages on account of such personal injury, property damage or advertising injury, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient; but PEIC shall not be obligated to pay any claim or judgment or to defend any suit

after PEIC's limit of liability has been exhausted by payment of judgments or settlements;

(b) in addition to the amount of ultimate net loss payable:

    (i) pay all expenses incurred by PEIC, all costs taxed against the Insured in any suit defended by PEIC and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before PEIC has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of PEIC's liability thereon;

    (ii) pay premiums on appeal bonds required in any suit, premium on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy, and the cost of bail bonds required of the Insured because of accident or traffic law violation arising out of the use of any vehicle to which this policy applies but PEIC shall have no obligation to apply for or furnish any such bonds;

    (iii) pay reasonable expenses incurred by the Insured at PEIC's request in assisting PEIC in the investigation or defense of any claim or suit, including actual loss of earnings not to exceed $50 per day;

In jurisdictions where PEIC may be prevented by law or otherwise from carrying out this agreement, PEIC will indemnify the Insured for such expense incurred with its written consent in accordance with this provision.

## PERSONS OR ENTITIES INSURED

(1) The Named Insured is the organization(s) named in the declarations of this policy and includes:

    (a) any subsidiary company (including subsidiaries thereof) and any other company under their control and active management at the inception date of this policy;

    (b) new organizations acquired by the Named Insured during the policy period, through consolidation, merger, purchase of the assets of, or assumption of control and active management; provided such acquisition or assumption is reported to PEIC within 60 days after it is effected and provided further such acquisition is endorsed on this policy;

    (c) If the Named Insured in the declarations is a partnership or joint venture, any partner or member thereof is included as a Named Insured but only with respect to his liability as a partner or member of such partnership or joint venture.

(2) Each of the following is an insured under this policy to the extent set forth below:

    (a) any person, organization, trustee or estate to whom or to which the

Named Insured is obligated by virtue of a written contract or permit to provide insurance such as is afforded by the terms of this policy, but only with respect to operations by or on behalf of the Named Insured or to facilities of or facilities used by the Named Insured and then only to the extent of the coverage required by such contract and for the limits of liability specified in such contract, but in no event for insurance not afforded by this policy nor for limits of liability in excess of the applicable limits of liability of this policy;

(b) at the option of the Named Insured and subject to the terms of the coverage of this insurance, any additional insured(s) included in the underlying insurance listed in Schedule A, but only to the extent that insurance is provided for such additional insured(s) thereunder;

(c) except with respect to the ownership, maintenance or use, including loading or unloading, of automobiles or aircraft,

    (i) any officer, executive, employee, director or stockholder of the Named Insured while acting on behalf of such Named Insured;

    (ii) any person or organization while acting as real estate manager for the Named Insured;

LD-6892 Printed in U.S.A.

**PERSONS OR ENTITIES INSURED**
(continued)

SPECIMEN FORM
From SSU

(d) any person while using, (with the permission of the Named Insured, any automobile or aircraft owned by, loaned to or hired for use by or on behalf of the Named Insured and any person or organization legally responsible for the use thereof, provided the actual operation or other actual use is within the scope of such permission, and any officer, director or stockholder of the Named Insured with respect to the use of an automobile or aircraft not owned by the Named Insured but only while such automobile or aircraft is being used in the business of the Named Insured. The insurance with respect to any person or organization other than the Named Insured does not apply under this paragraph (d):

   (i) to any person or organization, or to any agent or employee thereof, operating an automobile sales agency, repair shop, service station, storage garage or public parking place;

   (ii) to any automobile or aircraft hired by or loaned to the Named Insured, to the owner or a lessee (of

whom the Named Insured is a sub-lessee) thereof other than the Named Insured, or to any agent or employee of such owner or lessee;

   (iii) to any manufacturer of aircraft, aircraft engines or aviation accessories, or any aviation sales, service or repair organization or airport or hangar operator or their respective employees or agents.

## RETAINED LIMIT—PEIC'S LIMIT OF LIABILITY

Regardless of the number of (1) Insureds under this policy, (2) persons or organizations who sustain injury or damage, or (3) claims made or suits brought because of personal injury, property damage, or advertising injury, PEIC's liability is limited as follows:

   With respect to personal injury, property damage or advertising injury, or any combination thereof, PEIC's liability shall be only for the ultimate net loss in excess of the Insured's retained limit defined as the greater of:

   (a) an amount equal to the limits of liability indicated beside the underlying insurance listed in Schedule A hereof, plus the applicable limits of any other underlying insurance collectible by the Insured; or

   (b) the amount specified in Item 3. of the Limits of Liability section of the declarations because of personal injury, property damage or advertising injury not within the terms of the coverage of the underlying insurance listed in Schedule A:

and then for an amount not exceeding the amount specified in Item 1. of the Limits of Liability section of the declarations arising out of any one occurrence.

There is no limit to the number of occurrences during the policy period for which claims may be made, except that the liability of PEIC, because of

either the products hazard or the completed operations hazard, or both combined, arising out of all occurrences during each policy year shall not exceed the amount specified in Item 2. of the Limits of Liability section of the declarations.

If the aggregate limits of liability of the underlying insurance listed in Schedule A are reduced or exhausted because of personal injury, property damage or advertising injury during the period of this policy, PEIN will, subject to PEIC's limit of liability stated above, continue such coverage as is afforded by such listed underlying insurance for the remainder of the policy year of such underlying insurance in excess of the reduced or exhausted limits.

For the purpose of determining the limits of PEIC's liability, (1) all personal injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence, and (2) with respect to advertising injury, all injury arising out of any advertisement, publicity article, broadcast or telecast or any combination thereof involving the same injurious material or act, regardless of the frequency of repetition thereof or the number or kind of media used, whether claim is made by one or more persons, shall be deemed to arise out of one occurrence.

## POLICY PERIOD, TERRITORY

This policy applies to personal injury, property damage or advertising injury which occurs anywhere during the policy period.

## EXCLUSIONS

This policy does not apply:

(a) to any obligation for which the Insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(b) to property damage to (1) property owned by the Insured, or (2) the Insured's products arising out of such products or any part of such products, or (3) work performed by or on behalf of the Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(c) to loss of use of tangible property which has not been physically injured or destroyed resulting from (1) a delay in or lack of performance by or on behalf of the Named Insured of any contract or agreement, or (2) the failure of the Named Insured's products or work performed by or on behalf of the Named Insured to meet the level of performance, quality, fitness or durability warranted or represented by the Named Insured; but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the Named Insured's products or work performed by or on behalf of the Named Insured after such products or work have been put to use by any person or organization other than an Insured;

(d) to damages claimed for the withdrawal, inspection, repair, replacement or loss of the use of the Insured's products or work completed by or for the Insured or of any property of which such products or work form a part,

if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(e) to advertising injury resulting from (1) failure of performance of contract, (2) infringement of trade mark, service mark or trade name by use thereof as the trade mark, service mark or trade name of goods or services sold, offered for sale or advertised, but this shall not relate to titles or slogans, (3) incorrect description of any article or commodity, or (4) mistake in advertised price;

(f) to property damage in accordance with the provisions of the property damage exclusion endorsement attached hereto;

(g) as respects parts (b), (c), and (d) of the definition of personal injury, to injury arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of the Named Insured;

(h) as respects part (c) of the definition of personal injury, to injury arising out of any publication or utterance, if the first injurious publication or utterance of the same or similar material by or on behalf of the Named Insured was made prior to the effective date of this policy;

(i) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

# DEFINITIONS

SPECIMEN FORM
From SSU

When used in this policy (including endorsements forming a part hereof):

"advertising injury" means libel, slander, defamation, infringement of copyright, title or slogan, piracy, unfair competition, idea misappropriation or invasion of rights of privacy, arising out of the Insured's advertising activities;

"bodily injury" means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom;

"completed operations hazard" includes personal injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the Insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(a) when all operations to be performed by or on behalf of the Insured under the contract have been completed,

(b) when all operations to be performed by or on behalf of the Insured at the site of the operations have been completed, or

(c) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete shall be deemed completed.

The completed operations hazard does not include personal injury or property damage arising out of (1) operations in connection with the transportation of property, unless the personal injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof, (2) the existence of tools, uninstalled equipment or abandoned or unused materials;

"damages" means only those damages which are payable because of personal injury, property damage or advertising injury to which this insurance applies and includes damages for (1) death and for care and loss of services resulting from personal injury, (2) loss of use of property resulting from property damage, and (3) advertising injury;

"Insured" means any person or organization qualifying as an Insured under the Persons or Entities Insured section of this policy. The insurance afforded applies separately to each Insured against whom claim is made or suit is

brought, except with respect to the limits of PEIC's liability;

"Insured's products" means goods or products manufactured, sold, handled or distributed by the Insured or by others trading under his name, including any container thereof (other than a vehicle) but "Insured's products" shall not include a vending machine or any property other than such a container, rented to or located for use of others but not sold;

"Named Insured" means the organization(s) named in the declarations of this policy;

The word "Insured" includes the Named Insured;

"occurrence" means an accident, including continuous or repeated exposure to conditions, which results in personal injury or property damage neither expected nor intended from the standpoint of the Insured;

"personal injury" means, (a) bodily injury; (b) false arrest, detention or imprisonment or malicious prosecution; (c) the publication or utterance of a libel or slander or of other defamatory or derogatory material, or a publication or utterance in violation of an individual's right of privacy, except when any of the foregoing of this part (c) arises from publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the Named Insured; (d) wrongful entry or eviction, or other invasion of the right of private occupancy; (e) assault and battery not committed by or at the direction of the Insured, unless committed for the purpose of protecting persons or property;

"products hazard" includes bodily injury and property damage arising out of the Insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the Insured and after physical possession of such products has been relinquished to others;

"property damage" means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period;

"ultimate net loss" means the sum actually paid or payable in cash in the settlement or satisfaction of losses for which the Insured is liable either by adjudication or compromise with the written consent of PEIC, after making proper deduction for all recoveries and salvages collectible, but excludes all loss expenses and legal expenses (including attorneys' fees, court costs and interest on any judgment or award) and all salaries of employees and office expenses of the Insured, PEIC or any underlying insurer so incurred.

# CONDITIONS

**1. Premium**

The premium for this policy shall be as stated in the Declarations.

If the premium as stated in the declarations is an advance premium, it shall be computed in accordance with the premium computation endorsement attached to the policy. If the Named Insured includes more than one person, partnership or organization they shall be jointly and severally liable for the premium for this policy.

**2. Inspection and Audit**

PEIC shall be permitted but not obligated to PEIC's inspect the Named Insured's property and operations at any time. Neither PEIC's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation. PEIC may examine and audit the Insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

**3. Insured's Duties in the Event of Occurrence, Claim or Suit**

(a) In the event of an occurrence, reasonably likely to exceed the retained limit, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to PEIC or any of its authorized agents as soon as practicable.

(b) If claim is made or suit is brought against the Insured, the Insured shall immediately forward to PEIC every demand, notice, summons

or other process received by him or his representative.

(c) The Insured shall cooperate with PEIC and upon PEIC's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the Insured because of personal injury or property damage or advertising injury with respect to which insurance is afforded under this policy; and the Insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense; however, if the amount of ultimate net loss becomes certain either through trial court judgment or agreement among the Insured, the claimant and PEIC, then, the Insured may pay the amount of ultimate net loss to the claimant to effect settlement and, upon submission of due proof thereof, PEIC shall indemnify the Insured for that part of such payment which is in excess of the retained limit, or, PEIC will, upon request of the Insured, make such payment to the claimant on behalf of the Insured.

(d) The Named Insured shall promptly reimburse PEIC for any amount of ultimate net loss paid on behalf of any Insured within the retained limit.

(e) As this policy is excess insurance, the Insured warrants that coverage under the uninsured motorist laws will be maintained during the policy period. It is agreed that the Named Insured shall promptly reimburse PEIC for any amount of ultimate net loss paid on behalf of any Insured as respects any payment made under an uninsured motorist law, or any similar law.

**SPECIMEN FORM**
**From SSU**

4. **Appeals**

If the Insured or the Insured's underlying insurer elects not to appeal a judgment in excess of the retained limit, PEIC may elect to do so at its own expense, and shall be liable for the taxable costs, disbursements and interest incidental thereto, but in no event shall the liability of PEIC for ultimate net loss exceed the amount specified in the Limits of Liability section of the Declarations plus the taxable costs, disbursements and interest incidental to such appeal.

5. **Action Against PEIC**

No action shall lie against PEIC unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and PEIC. Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join PEIC as a co-defendant in any action against the Insured to determine the Insured's liability, nor shall PEIC be impleaded by the Insured or his Legal Representative. Bankruptcy or insolvency of the Insured shall not relieve PEIC of any of its obligations hereunder.

6. **Other Insurance**

If collectible insurance with any insurer is available to the Insured covering a loss also covered hereunder, the insurance hereunder shall be in excess of, and not contribute with, such other insurance provided, however, this does not apply to insurance which is written as excess insurance over PEIC's limit of liability provided in this policy.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, PEIC shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) Contribution by Equal Shares. If all of such other valid and collectible insurance provides for contribution by equal shares, PEIC shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(b) Contribution by Limits. If any of such other insurance does not provide for contribution by equal shares, PEIC shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

7. **Subrogation**

In the event of any payment under this policy, PEIC shall be subrogated to all the Insured's rights of recovery therefor against any person or organization; and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Any amount so recovered shall be apportioned as follows:

Any interest (including the Insured's) having paid an amount in excess of the retained limit plus PEIC's limit of liability hereunder shall be reimbursed first to the extent of actual payment. PEIC shall be reimbursed next to the extent of its actual payment hereunder. If any balance then remains unpaid, it shall be applied to reimburse the Insured or any underlying insurer, as their interest may appear. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries. If there is no recovery in proceedings conducted solely by PEIC, it shall bear the expenses thereof.

8. **Changes**

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop PEIC from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

9. **Assignment**

Assignment of interest under this policy shall not bind PEIC until its consent is endorsed hereon; if, however, the Named Insured shall die, or be adjudged bankrupt or insolvent, such insurance as is afforded by this policy shall apply (a) to the Named Insured's legal representative, as the Named Insured, but only while acting within the scope of his duties as such, and (b) with respect to the property of the Named Insured, to the person having proper temporary custody thereof, as Insured, but only until the appointment and qualification of the legal representative.

10. **Three Year Policy**

If this policy is issued for a period of three years, the limits of PEIC's liability shall apply separately to each consecutive policy year thereof.

11. **Maintenance of Underlying Policies**

The Named Insured shall maintain the underlying policies (and renewals thereof) with limits of liability as stated in Schedule A in full effect during this policy period, except for any reduction or exhaustion of the aggregate limit or limits contained in such policies solely by payment of claims arising out of occurrences which happen during this policy period. Failure of the Named Insured to comply with the foregoing shall not invalidate this policy but in the event of such failure PEIC shall be liable only to the extent that it would have been liable had the Named Insured complied therewith.

The Named Insured shall give PEIC written notice as soon as practicable of any change in the scope of coverage or in the amount of limits of insurance under any underlying policy, and of the termination of any coverage or exhaustion of aggregate limits of any underlying insurer's liability.

12. **Cancellation**

This policy may be cancelled by the Named Insured by surrender thereof to PEIC or any of its authorized agents or by mailing to PEIC written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by PEIC by mailing to the Named Insured at the address shown in this policy written notice stating when, not less than thirty days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Named Insured or by PEIC shall be equivalent to mailing. If the Named Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If PEIC cancels, earned premium shall be computed pro rata. When this policy insures more than one Named Insured cancellation may be effected by the first named of such Named Insured for the account of all Insureds. Notice of cancellation by PEIC to the first Named Insured shall be deemed notice to all Insureds and payment of any unearned premium to such first named Named Insured shall be for the account of all Insureds. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

13. **Acceptance**

By acceptance of this policy, the Insured agrees that this policy embodies all agreements existing between himself and PEIC or any of its agents relating to this insurance.

IN WITNESS WHEREOF, the PACIFIC EMPLOYERS INSURANCE COMPANY has caused this policy to be signed by its President and a Secretary at Los Angeles, California, and countersigned on the Declarations page by a duly Authorized Agent of the Company.

DENNIS C. POULSEN, Secretary

BERNARD A. BUGE, JR., President



**NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT**
(Broad Form)

Endorsement #1

| Named Insured | |
|---|---|
| BUFFALO FORGE COMPANY | |
| Effective | Policy No. |
| 6/01/80-81 | XMO 00 36 49 |
| Issued by (Name of Insurance Company) | |
| PACIFIC EMPLOYERS INSURANCE COMPANY | |

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

**ALL AUTOMOBILE LIABILITY, GENERAL LIABILITY AND MEDICAL PAYMENTS**
**INSURANCE OTHER THAN FAMILY AUTOMOBILE, SPECIAL PACKAGE AUTOMOBILE,**
**COMPREHENSIVE PERSONAL AND FARMER'S COMPREHENSIVE PERSONAL INSURANCE**

---

It is agreed that:

I. The policy does not apply:

A. Under any Liability Coverage, to bodily injury or property damage

(1) with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

C. Under any Liability Coverage, to bodily injury or property damage resulting from the hazardous properties of nuclear material, if

(1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (b) has been discharged or dispersed therefrom;

(2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

(3) the bodily injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

II. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.

*Donald J. Gregory*
Authorized Agent

LC-1012 (A0009)   12-7-66   Printed in U.S.A.
LG3201



NUCL    ENERGY LIABILITY EXCLUSION ENDORS    ENT
(Broad Form)

Endorsement #1

| Named Insured | |
|---|---|
| BUFFALO FORGE COMPANY | |
| Effective | Policy No. |
| 6/01/80-81 | XMO 00 36 49 |
| Issued by (Name of Insurance Company) | |
| PACIFIC EMPLOYERS INSURANCE COMPANY | |

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

**ALL AUTOMOBILE LIABILITY, GENERAL LIABILITY AND MEDICAL PAYMENTS INSURANCE OTHER THAN FAMILY AUTOMOBILE, SPECIAL PACKAGE AUTOMOBILE, COMPREHENSIVE PERSONAL AND FARMER'S COMPREHENSIVE PERSONAL INSURANCE**

---

It is agreed that:

I. The policy does not apply:

A. Under any Liability Coverage, to bodily injury or property damage

(1) with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

C. Under any Liability Coverage, to bodily injury or property damage resulting from the hazardous properties of nuclear material, if

(1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (b) has been discharged or dispersed therefrom;

(2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

(3) the bodily injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

II. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.

Donald J. Gregory
Authorized Agent

# INA

## SCHEDULE OF UNDERLYING INSURANCE

Endorsement #2

| SCHEDULE A | POLICY NO. XMO   00 36 49 |
|---|---|

| Carrier, Policy Number & Period | Type of Policy | Applicable Limits |
|---|---|---|
| Utica Mutual GLA 3928 6-1-80/81 | Comprehensive General Liability | 1,000/1,000 250/1,000 |
| Utica Mutual BAP-704855 6-1-80/81 | Comprehensive Auto. Liability | 1,000,000 |
| Utica Mutual W-236341-79 6-1-80/81 | Workmen's Compensation and Employer's Liability | 100,000 |

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| | | | #3 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| XMO | 00 36 49 | | |
| Issued By (Name of Insurance Company) | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## NAMED INSURED ENDORSEMENT

It is hereby agreed and understood that the named insured shall read as follows:

1. Buffalo Forge Company
2. Buffalo Pumps, Division of Buffalo Forge Company.
3. Buffalo Forge Sales, Inc.
4. Buffalo Forge Export Co., Inc.
5. Aerofin Corporation
6. Aerofin Corporation (Canada)Ltd.
7. Aerofin S.A.
8. Amherst Division Buffalo Forge Company
9. Buffalo Forge S.A. de C.V.
10. Immobilaria Tepalcapa S.A. de C.V., Mexico

and all other entities, principally owned by the named Insured, as may hereafter be created or acquired.

Authorized Agent

CC-1E15  Ptd. in U.S.A.

EXTRA COPY

# INA

## PROPERTY DAMAGE EXCLUSION ENDORSEMENT

### (Excess Policy Forms Only)

| Named Insured | |
|---|---|
| Effective | Policy No.  XMO 00 36 49 |
| Issued by (Name of Insurance Company) | |

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

Endorsement No. _____ #4

In accordance with the provisions of Exclusion (f), this policy does not apply:

(f)   to property damage to (1) property occupied by or rented to the Insured, (2) property used by the Insured, or (3) property in the care, custody or control of the Insured or as to which the Insured is for any purpose exercising physical control; but parts (2) and (3) of this exclusion do not apply with respect to liability under a written sidetrack agreement and part (3) of this exclusion does not apply with respect to property damage (other than to elevators) arising from the use of an elevator at premises owned by, rented to or controlled by the Named Insured.

Authorized Agent

LC-1375   Printed in U.S.A.

**INA**

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| | | | #5 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| XMO | 00 36 49 | | |
| Issued By (Name of Insurance Company) | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## EXCLUSION OF EMPLOYEE RETIREMENT
## INCOME SECURITY ACT LIABILITY

In consideration of the premium charged, it is agreed that the insurance afforded by this policy shall not apply with respect to any liability arising out of the intentional or unintentional violation or violations of any provision of provisions of the Employee Retirement Income Security Act of 1974, Public Law 93-406 (commonly referred to as the Pension Reform Act of 1974), or any amendments thereto.

Authorized Agent

CC-1E15  Ptd. in U.S.A.

EXTRA COPY



| Named Insured<br>**BUFFALO FORGE COMPANY** | | | Endorsement Number<br>#6 |
|---|---|---|---|
| Policy Symbol<br>XMO | Policy Number<br>00 36 49 | Policy Period<br>6/01/80-81 | Effective Date of Endorsement<br>6/01/80 |
| Issued By (Name of Insurance Company)<br>**PACIFIC EMPLOYERS INSURANCE COMPANY** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

It is hereby understood and agreed that Endorsement #2, Schedule of Underlying Insurances shall be amended and read as follows:

| CARRIER, POLICY NO. & PERIOD | TYPE OF POLICY | APPLICABLE LIMITS |
|---|---|---|

**Entities #1,2,3,4, and 8**

| Utica Mutual Insur. Co.<br>GLA 3928<br>6/01/80-81 | Comprehensive General<br>Liability | $1,000,000/1,000,000 BI<br>$  250,000/1,000,000 PD |

**Entity #5**

| Utica Mutual Insur. Co.<br>GLA 3930<br>6/01/80-81 | Comprehensive General<br>Liability | $1,000,000/1,000,000 BI<br>250,000/1,000,000 PD |

**Entity #6**

| Utica Mutual Insur. Co.<br>UBP 1088<br>6/01/80-81 | Comprehensive General<br>Liability | $1,000,000 BI<br>250,000/1,000,000 PD |

**Entity #7**

| Zurich Insur. Co.<br>3099885<br>3/09/77-2/28/82 | Comprehensive General<br>Liability | $1,000,000 BI-PD C.S.L. |

**Entity #9 and 10**

| Seguros LaComercial SA<br>L 6255499<br>6/30/80-81 | Comprehensive General | $1,000,000 BI-PD C.S.L. |

Authorized Agent

CC-1E15  Ptd. in U.S.A.

**EXTRA COPY**

# INA

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| BUFFALO FORGE COMPANY | | | #6 (Continued) |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| YMO | 00 36 49 | 6/01/80-81 | 6/01/80 |
| Issued By (Name of Insurance Company) | | | |
| PACIFIC EMPLOYERS INSURANCE COMPANY | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

Entities 1,2,3,4, and 8

Utica Mutual Insur. Co.          Comprehensive Automobile      $500,000 BI-PD C.S.L.
BAP 704855                           Liability
6/01/80-81


Entity 5

Utica Mutual Insur. Co.          Comprehensive Automobile      $500,000 BI-PD C.S.L.
BAP 704854                           Liability
6/01/80-81


Entity 6

Utica Mutual Insur. Co.          Comprehensive Automobile      $1,000,000 BI
UBP 1088                             Liability                        $  250,000/1,000,000 PD
6/01/80-81                                                            (Non-owned/Hired)


Entities 9 and 10

Seguros LaComercial SA           Comprehensive Automobile      $1,000,000 BI-PD CSL
L 6255499                            Liability
6/30/80-81


Entities 1,2,4, and 8

Utica Mutual Insur. Co.          Workers Compensation          $100,000
W236341-80                           Employers Liability
6/01/80-81

Entity 3

Utica Mutual Insur. Co.          Workers Compensation          $100,000
W249814-80                           Employers Liability
6/01/80-81


Unlimited Employers' Liability – New York
$100,000 Employer's Liability provided for all other entities.


                                                        _Donald J. Gregory_
                                                          Authorized Agent

:-1E15 Ptd. in U.S.A.

**ORIGINAL**

# INA

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| BUFFALO FORGE COMPANY. | | | #7 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XMO | 003649 | 6/1/80–81 | 3/13/81 |

| Issued By (Name of Insurance Company) |
|---|
| PACIFIC EMPLOYERS INSURANCE COMPANY |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

ADDITIONAL INSURED – (Controlling Interest)

It is agreed that:

1. The "Persons Insured" provision is amended to include as an insured the person or organization designated below, but only with respect to his liability arising out of

   a. his financial control of the named insured or
   b. premises owned, maintained or controlled by him while said premises are leased to or occupied by the named insured.

2. The insurance afforded by this endorsement does not apply to structural alterations, new construction and demolition operations performed by or for said person or organization.

Name of Person or Organization:

AMPCO PITTSBURGH CORPORATION

NLB:3/19/81

*Donald J. Gregory*
Authorized Agent

CC-1E15 Ptd. in U.S.A.

ORIGINAL.